IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-00063-WYD-CBS

DAVID SAVOY THOMAS,
      Plaintiff,
v.

US BUREAU OF PRISONS,
CALVIN L. POLLAND,
C.B. COLLINS,
R. MILLER,
G. DRENNAN,
JOHN DOE,
PAULA PRICE,
HECTOR A. RIOS, JR., and
J.E. GUNJA,
      Defendants.

---

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Craig B. Shaffer

This civil action comes before the court on "Defendants' Motion to Dismiss to the Extent Defendants are Sued in Their Official Capacities" (filed July 3, 2006) (doc. # 27). Pursuant to the Order of Reference dated June 2, 2006 (doc. # 16) and the memorandum dated July 5, 2006 (doc. # 29), the Motion was referred to the Magistrate Judge. The court has reviewed the pending Motion, Thomas' "Memorandum Brief" ("Response") (filed July 28, 2006) (doc. # 38), Defendants' Reply (filed August 14, 2006) (doc. # 42), Thomas' "Response to Defendants' Reply" ("Surreply") (doc. # 43), the pleadings, the entire case file, and the applicable law and is sufficiently advised in the premises.

1

I.      Statement of the Case

Thomas, a prisoner proceeding *pro se*, is currently incarcerated in the New Mexico

Corrections Department ("NMCD") in Grants, New Mexico.  Thomas' claims arise out of

events that occurred during his incarceration at the United States Penitentiary in Florence,

Colorado ("USP Florence").  The Amended Complaint contains three claims: (1) violation

of the Eighth Amendment under *Bivens v. Six Unknown Named Agents of Fed. Bureau of*

*Narcotics*, 403 U.S. 388 (1971), (2) violation of "Federal and State Laws," and (3)

negligence under the FTCA and "Colorado State Tort Laws."  (Amended Complaint at pp.

17-21 of 37).[1]  Thomas alleges that in November or December of 2003, he suffered "a life

threatening case of pneumonia."  (Amended Complaint at p. 11 of 37).  Thomas alleges

pursuant to *Bivens* that Defendants violated his Eighth Amendment rights when they

repeatedly denied, delayed, and failed to provide him with proper medical attention.  (*See*

Amended Complaint at pp. 11, 17 of 37).  Thomas further alleges negligence and medical

malpractice pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680,

and that Defendants violated "Federal and State Laws regarding the government's

---

[1]      The Tenth Circuit has "specifically held that the FTCA and a Bivens claim are alternative remedies." *Robbins v. Wilkie*, 300 F.3d 1208, 1213 (10th Cir. 2002). "When a federal law enforcement officer commits an intentional tort, the victim has two avenues of redress: 1) he may bring a Bivens claim against the individual officer based on the constitutional violation, or 2) he may bring a common law tort action against the United States pursuant to the FTCA." *Engle v. Mecke*, 24 F.3d 133, 135 (10th Cir. 1994) (citation omitted).  "These are separate and distinct causes of action arising out of the same transaction." *Engle*, 24 F.3d at 135.  "Although the plaintiff may elect initially to bring his action against either defendant, a judgment against the United States under the FTCA constitutes ‹a complete bar to any action by the claimant, by reason of the same subject matter, against the employee . . . whose act or omission gave rise to the claim.' " *Engle*, 24 F.3d at 135 (quoting 28 U.S.C. § 2676).

obligation to provide medical care . . . ."  (*See* Amended Complaint at pp. 18-21 of 37).

Thomas seeks declaratory judgment, permanent injunctive relief, and compensatory and

punitive damages.  (Amended Complaint at pp. 24-26 of 37).

Defendants have moved to dismiss the Amended Complaint pursuant to Fed. R.

Civ. P. 12(b)(1) for lack of subject matter jurisdiction and  Fed. R. Civ. P. 12(b)(6) for

failure to state a claim upon which relief may be granted.

II.     Standard of Review

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a motion to dismiss

may be granted if the court does not have subject matter jurisdiction over the matter.  In

addressing a jurisdictional challenge, the court need not presume all of the allegations

contained in the amended complaint to be true, "but has wide discretion to allow affidavits,

other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts.

. . ."  *United States v. Rodriguez Aguirre*, 264 F.3d 1195, 1204 (10th Cir. 2001) (citation

omitted).

Rule 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim

upon which relief can be granted."  When reviewing a Rule 12(b)(6) motion to dismiss, the

court accepts the well-pleaded allegations of the complaint as true and construes them in

the light most favorable to the plaintiff.  *Ramirez v. Dep't of Corrections*, 222 F.3d 1238,

1240 (10th Cir.2000) (citation omitted).  A complaint should not be dismissed under Rule

12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in

support of his claim which would entitle him to relief."  *Ramirez*, 222 F.3d at 1240 (quoting

*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

The court must construe Thomas' Complaint and other papers liberally because he is representing himself. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a pro se complaint "to less stringent standards than formal pleadings drafted by lawyers"); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[a] pro se litigant's pleadings are to be construed liberally") (citations omitted).  However, the court cannot be a *pro se* litigant's advocate.  *Hall*, 935 F. 2d at 1110.  A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged.  *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).  *See also Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

III.    Analysis

A.    Claims under *Bivens* Against Defendants in Their Individual Capacities

In *Bivens*, 403 U.S. at 388, the Supreme Court recognized "an implied private right of action for damages against federal officers alleged to have violated a citizen's constitutional rights."  *Correctional Services Corporation v. Malesko*, 534 U.S. 61, 66 (2001).  "To establish a *Bivens* cause of action, a party must have some evidence to support finding that [a] federal agent acting under color of such authority violated some

4

cognizable constitutional right of plaintiff." *Hron v. Jenkins*, 15 F. Supp. 2d 1082, 1085 (D. Kan. 1998) (citing *Bivens,* 403 U.S. at 388).  "If a federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a Bivens claim against the offending individual officer, subject to the defense of qualified immunity."  *Malesko*, 534 U.S. at 72.  "The prisoner may not bring a Bivens claim against the officer's employer, the United States, or the BOP."  *Malesko*, 534 U.S. at 72.  *See also Simmat v. U.S. Bureau of Prisons* 413 F.3d 1225, 1231 (10th Cir. 2005) ("a *Bivens* claim lies against the federal official in his individual capacity – not . . . against officials in their official capacity");  *Steele v. Federal Bureau of Prisons*, 355 F.3d 1204, 1214 (10th Cir. 2003) ("a *Bivens* claim cannot be brought against the BOP, as a federal agency, or the other defendants in their official capacities") (citation omitted), *cert. denied*, 543 U.S. 925 (2004);  *Hatten v. White*, 275 F.3d 1208, 1210 (10th Cir. 2002) (doctrine of sovereign immunity precludes a *Bivens* action against the United States or any agency thereof);  *Weaver v. United States*, 98 F.3d 518, 520 (10th Cir. 1996) (claim for damages against a federal defendant in his official capacity is treated as a claim against the United States).

Thomas concedes that he is bringing his claim for violation of his Eighth Amendment rights only against the individual Defendants in their individual capacities pursuant to *Bivens*, 403 U.S. 388.  (*See* Thomas' Surreply at pp. 2-5).  Sovereign immunity bars Thomas' *Bivens* claims against the United States.  Defendants' Motion is conceded and properly granted.


B.     Thomas' Request for Injunctive Relief

5

As he was released from federal custody on or about June 4, 2004, Thomas concedes that his request for injunctive and declaratory relief are moot and are properly withdrawn. (*See* Thomas' Surreply at p. 6; Thomas' Response at pp. 11, 16). As to Thomas' request for injunctive and declaratory relief, Defendants' Motion is conceded and properly granted.

C.     Claims under FTCA

1.     United States of America is Proper Defendant

Thomas has conceded that the United States is "the only proper named Defendant as to his tort claims." (Thomas' Surreply at p. 7;  Thomas' Response at pp. 13-14)). On August 9, 2006, the court approved without objection the substitution of the United States for the individual Defendants to the extent that Thomas' Amended Complaint alleges tort claims. (*See* Order (doc. # 41)). Thomas' tort claims are not cognizable against Defendants in their official capacities. As to this issue, Defendants' Motion is conceded and properly granted.

2.     Certificate of Review Pursuant to Colo. Rev. Stat. § 13-20-602(1)

Defendants move to dismiss Thomas' FTCA claims for failure to file a certificate of review that is required to pursue claims alleging professional negligence by a licensed professional.

> In every action for damages or indemnity based upon the alleged professional negligence of . . . a licensed professional, the plaintiff's or complainant's attorney shall file with the court a certificate of review for each

> . . . licensed professional named as a party, as specified in subsection (3) of this section, within sixty days after the service of the complaint, counterclaim, or cross claim against such person unless the court determines that a longer period is necessary for good cause shown.

Colo. Rev. Stat. § 13-20-602(1)(a). Although he has not filed a certificate of review, Thomas argues that the requirement should not apply to his FTCA claim because the sole Defendant for the FTCA claims is the United States, which is not a "licensed professional" under Colo. Rev. Stat. § 13-20-602(1).

The Tenth Circuit Court of Appeals has determined "that the Colorado review statute is applicable to professional negligence claims brought against the United States under the FTCA." *Hill v. Smithkline Beecham Corp.*, 393 F.3d 1111, 1117 (10th Cir. 2004). "[T]o hold that the United States is not entitled to the protection of the certificate of review requirement would place it in a differently situated position than private parties defending against professional negligence claims in Colorado, thereby undermining the conditions precedent to the United States' waiver of sovereign immunity in the FTCA." *Hill*, 393 F.3d at 1118. "The certificate of review requirement applies whether or not the plaintiff is represented by counsel." *Hill*, 393 F.3d at 1118 (citation omitted). "A plaintiff's failure to file the certificate requires dismissal of professional negligence claims." *Hill*, 393 F.3d at 1118 (citations omitted); Colo. Rev. Stat. § 13-20-602(4).

Thomas argues that the court may extend the time for filing a certificate of review. Based on the additional grounds for dismissal of this civil action set forth in this Recommendation, *infra.*, the court concludes that an extension of time for filing a certificate of review would be futile.

D.    Exhaustion of Administrative Remedies

Defendants argue that the entire Amended Complaint must be dismissed because Thomas has not exhausted his administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a).

Prior to filing this civil action, Thomas was required to exhaust administrative remedies pursuant to the PLRA. *Booth v. Churner*, 532 U.S. 731, 741 (2001). Section 1997e(a) provides:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

"In the absence of particularized averments concerning exhaustion showing the nature of the administrative proceeding and its outcome, the action must be dismissed under § 1997e." *Steele*, 355 F.3d at 1211 (internal quotation marks and citation omitted). Defendants argue that the exhaustion requirement obliges the court to dismiss the Amended Complaint because Thomas' Request for Administrative Remedy, Case No. 333796-F1, submitted to the United States Bureau of Prisons ("BOP") on May 11, 2004, was untimely filed.

The court may take judicial notice of the BOP's administrative process. *See Ray v. Aztec Well Service Co.*, 748 F.2d 888, 889 (10th Cir. 1984) (court can take judicial notice of agency rules and regulations); *Antonelli v. Ralston*, 609 F.2d 340, 341, n. 1 (8th Cir. 1979) (judicial notice taken of Bureau of Prisons' Program Statement). The BOP has set forth a four-step administrative process "through which inmates may seek formal review

of an issue which relates to any aspect of their confinement [with exceptions not pertinent to this case], if less formal procedures have not resolved the matter." 28 C.F.R. § 542.10, *et seq.* "[A]n inmate shall first present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy." 28 C.F.R. § 542.13(a). Following informal attempts to resolve a complaint, the procedure requires that an inmate submit to the Warden "a formal written Administrative Remedy Request, on the appropriate form (B-9), 20 calendar days following the date on which the basis for the Request occurred." 28 C.F.R. § 542.14(a). The Warden must respond within 20 calendar days. 28 C.F.R. § 542.18. If unsatisfied with the Warden's response, the inmate may file "an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). The Regional Director must respond within 30 days. 28 C.F.R. § 542.18. If unsatisfied with the Regional Director's response, the prisoner "may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response." 28 C.F.R. § 542.15(a). The General Counsel must respond within 40 days. 28 C.F.R. § 542.18. "If the inmate does not receive a response within the time allotted for reply, . . . the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

Thomas' claims are based on events that happened in November and December of 2003. (*See* Amended Complaint at pp. 11-16 of 37). After attempting informal resolution on April 28, 2004, Thomas filed his Request for Administrative Remedy on May 11, 2004, approximately 4 months after the events that formed the basis for the Request

occurred.  (*See* Inmate Attempt at Informal Resolution, Amended Complaint at p. 34 of 37; Request for Administrative Remedy, Case No. 333796-F1, Amended Complaint at p. 33 of 37).  Thomas' initial Request for Administrative Remedy was immediately denied as untimely.  (*See* Rejection Notice - Administrative Remedy, Amended Complaint at p. 31 of 37).  Thomas filed an appeal to the regional office on May 24, 2004 that was rejected on May 28, 2004.  (*See* Regional Administrative Remedy Appeal, Amended Complaint at p. 29 of 37).  Thomas filed an appeal to the national office on July 29, 2004 that was rejected on August 11, 2004.  (*See* Central Office Administrative Remedy Appeal, Amended Complaint at p. 27 of 37).

The United States Supreme Court recently considered "whether a prisoner can satisfy the Prison Litigation Reform Act's exhaustion requirement, 442 U.S.C. § 1997e(a), by filing an untimely or otherwise procedurally defective administrative grievance or appeal."  *Woodford v. Ngo*, 126 S. Ct. 2378, 2382 (2006).  The Court held "that proper exhaustion of administrative remedies is necessary."  *Woodford*, 126 S. Ct. at 2382.  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  *Woodford*, 126 S. Ct. at 2386.

Thomas argues that "[i]f a prison accepts a belated filing, and considers it on the merits, that step makes the filing proper for purposes of state law and avoids exhaustion, default, and untimeliness hurdles in federal court."  (Thomas' Response at p. 17).  However, the BOP rejected Thomas' initial Request for Administrative Remedy as untimely without implying any view about the merits of the grievance.  An untimely administrative

10

claim is unexhausted.  *Woodford*, 126 S. Ct. at 2384-86.  *See also Pozo v. McCaughtry*,

286 F.3d 1022, 1025 (7th Cir. 2002) (cited in Thomas' Response at p. 17).[2]  As all of

Thomas' claims are based on the same events, the failure to exhaust requires dismissal

of the Amended Complaint.  Accordingly,

     IT IS RECOMMENDED that:

---

[2]     The Second Circuit has created a three-part inquiry

in cases where a prisoner plaintiff plausibly seeks to counter defendants' contention that the prisoner has failed to exhaust available administrative remedies as required by the PLRA, 42 U.S.C. § 1997e(a). Depending on the inmate's explanation for the alleged failure to exhaust, the court must ask whether administrative remedies were in fact "available" to the prisoner. The court should also inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense. If the court finds that administrative remedies were available to the plaintiff, and that the defendants are not estopped and have not forfeited their non-exhaustion defense, but that the plaintiff nevertheless did not exhaust available remedies, the court should consider whether "special circumstances" have been plausibly alleged that justify "the prisoner's failure to comply with administrative procedural requirements."

*Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004) (citations omitted).  The court has not found and the parties have not argued that the Tenth Circuit has employed this three-part inquiry.  The Second Circuit "has yet to address the effect, if any, of the recent Supreme Court's *Woodford* decision on the three-step *Hemphill* inquiry."  *Hairston v. LaMarche*, Slip Copy, 2006 WL 2309592 * 6 n. 9 (S.D.N.Y. Aug. 10, 2006) (citation omitted) (**copy of case at Appendix to this Recommendation**).  "[I]t is open to doubt whether *Woodford* is compatible with the results reached in some of the cases in this Circuit applying *Hemphill*, and parts of the *Hemphill* inquiry may be in tension with *Woodford*."  *Hairston*, 2006 WL 2309592 at * 6 n. 9 (citations omitted).

     Further, Thomas has failed to demonstrate that he fits within any of the three *Hemphill* exceptions.  He makes no allegation that the grievance process was unavailable, that the Defendants' actions obstructed his ability to exhaust his claims, or that there exist any "special circumstances" that justify his failure to exhaust.  *See Hemphill*, 380 F.3d at 686.

1.      Defendants' Motion to Dismiss to the Extent Defendants are Sued in Their Official Capacities" (filed July 3, 2006) (doc. # 27) be GRANTED as follows:

a.      Thomas' claim for violation of his Eighth Amendment rights is brought against Defendants in their individual capacities pursuant to *Bivens*, 403 U.S. at 388;

b.      Thomas' request for injunctive and declaratory relief are moot and withdrawn;

c.      The United States of America is the only proper Defendant as to Thomas' FTCA and state law tort claims.

d.      Thomas' claims for professional negligence brought under the FTCA and state tort law be dismissed without prejudice for failure to file a certificate of review.

e.      The Amended Complaint be dismissed with prejudice for failure to exhaust administrative remedies.[3]

**Advisement to the Parties**

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).

The district judge shall make a *de novo* determination of those specific portions of

---

[3]      "[C]laims that have been properly denied by the prison as untimely are, practically speaking, procedurally defaulted, and thus may be dismissed from the complaint individually and with prejudice."  *Kikumura v. Osagie*, ___ F.3d ___, 2006 WL 2578805 at  * 16 (10th Cir (Colo.) Sept. 8, 2006).

the proposed findings or recommendations to which specific objection is made. 28 U.S.C.

§ 636(b)(1). A general objection that does not put the district court on notice of the basis

for the objection will not preserve the objection for *de novo* review. *See In re Griego*, 64

F.3d at 583; *United States v. One Parcel of Real Property Known As 2121 East 30th*

*Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). The district judge may

accept, reject, or modify, in whole or in part, the findings or recommendations made by the

magistrate judge. 28 U.S.C. § 636(b)(1).

"[A] party's objections to the magistrate judge's report and recommendation must

be both timely and specific to preserve an issue for de novo review by the district court or

for appellate review." *One Parcel of Real Property*, 73 F.3d at 1060. Failure to make

timely objections may bar *de novo* review by the district judge of the magistrate judge's

proposed findings and recommendations and will result in a waiver of the right to appeal

from a judgment of the district court based on the proposed findings and recommendations

of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999)

(district court's decision to review a magistrate's recommendation *de novo* despite the lack

of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real*

*Property*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and

recommendation must be both timely and specific to preserve an issue for *de novo* review

by the district court or for appellate review); *International Surplus Lines Insurance Co. v.*

*Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to

object to certain portions of the magistrate's order, cross-claimant had waived its right to

appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th

Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1119 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 15th day of September, 2005.

BY THE COURT:


_s/Craig B. Shaffer_____
United States Magistrate Judge

**APPENDIX**

Hairston v. LaMarche
Slip Copy, 2006 WL 2309592
S.D.N.Y.,2006.
August 10, 2006 (Approx. 13 pages)

-------------------------------------------------------------------------------

Slip Copy, 2006 WL 2309592 (S.D.N.Y.)

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Robert HAIRSTON, Plaintiff,
v.
New York State Department of Correction Officers Paul L. LaMARCHE, Michael J.
Walts, Reginald Wright, Thomas J. Wurster, Gregory S. Kutus & Sergeant Bernard A.
Lonczak, Defendants.
No. 05 civ. 6642(KMW)(AJP).
Aug. 10, 2006.

Brett Harris Klein, Leventhal & Klein, LLP, Staten Island, NY, for Plaintiff.
Christine Anne Ryan, Office of New York State Attorney General, New York, NY, for
Defendants.

**REPORT AND RECOMMENDATION**

ANDREW J. PECK, United States Magistrate Judge.
*1 To the Honorable Kimba M. Wood, United States Chief District Judge:
Plaintiff Robert Hairston, an inmate in the custody of the New York State Department of
Correctional Services ("DOCS"), brings this action pursuant to 42 U.S.C. § 1983,
represented by counsel, alleging violations of his constitutional rights due to his alleged
assault by various DOCS employees. (Dkt. No. 31: Am. Compl.) After completion of
discovery limited to whether Hairston exhausted his administrative remedies ( see Dkt. No.
28: 4/12/06 Order), defendants moved for summary judgment solely on the exhaustion
issue (Dkt. No. 34: Notice of Motion).[FN1]

    FN1. Defendants' summary judgment motion was made on behalf of

Correction Officers Lamarche and Walts because they were the only defendants who had been served at that time. After the motion was submitted, Hairston served Officer Wright and Sgt. Lonczak but has yet to serve Officers Kutus and Wurster. ( See Dkt. No. 40: Defs. Reply Br. at 1 n. 1.) Defendants have requested that, since their motion is not based on arguments particular to any individual defendant, their legal arguments be accepted on behalf of "the recently served Defendants as well [as] those individuals who have not yet been served." ( Id.) The Court accepts defendants' arguments on exhaustion on behalf of all defendants, and decision of this motion will be the law of the case.

For the reasons set forth below, defendants' motion for summary judgment should be DENIED.

## FACTS

Hairston's complaint alleges that on June 10, 2004 in Green Haven Correctional Facility, Correction Officers Lamarche and Walts physically attacked him, causing him physical injury. (Dkt. Nos. 34 & 38: Defs. & Hairston Rule 56.1 Stmts. ¶¶ 1, 7; Dkt. No. 31: Am. Compl. ¶¶ 10-19.) [FN2]

FN2. According to Hairston, the alleged assault occurred as follows: On June 10, 2004, Hairston was speaking to his wife on their weekly telephone conversation (Hairston Rule 56.1 Stmt. ¶ 24; Dkt. No. 37: Klein Aff. Ex. A: Hairston Aff. ¶¶ 6-7; Klein Aff. Ex. B: Willie Mae Hairston Aff. ¶¶ 3-4) when Correction Officer Lamarche banged on the door of the telephone room and yelled at Hairston to get off the phone and go to the second floor (Hairston Rule 56.1 Stmt. ¶¶ 25, 27; Hairston Aff. ¶ 7; Willie Mae Hairston Aff. Ex. 1: 6/10/04 Telecon. Tr. at 656-57). Hairston ended his phone call "within seconds" of the order and exited the telephone room, at which point Lamarche said, " 'I'll teach you not to turn your back,' " activated his personal alarm, told Hairston to go to the first floor and followed him there. (Hairston Rule 56.1 Stmt. ¶¶ 28, 30; Hairston Aff. ¶ 7; see Willie Mae Hairston Aff. ¶ 5; Willie Mae Hairston Aff. Ex. 1: 6/10/04 Telecon. Tr. at 656-57.)

Correction Officers Wright and Walts approached them on the first floor, and asked who the subject of the alarm was. (Hairston Rule 56.1 Stmt. ¶ 31; Hairston Aff. ¶ 8.) Officer LaMarche answered that Hairston was the alarm subject and "without provocation attacked [Hairston] from behind." (Hairston Rule 56.1 Stmt. ¶¶ 31-32; Hairston Aff. ¶ 8.) Officer Lamarche threw Hairston to the floor and repeatedly "smashed" Hairston's head into the floor and then repeatedly hit Hairston "in the face with a hard black object." (Hairston Rule 56.1 Stmt. ¶ 32; Hairston Aff. ¶ 8.) Officer Walts and other correction officers

repeatedly kicked Hairston. (Hairston Rule 56.1 Stmt. ¶ 32; Hairston Aff. ¶ 8.) Hairston's hands were handcuffed behind his back, he was dragged to his feet, and an officer kicked him in the chest. (Hairston Rule 56.1 Stmt. ¶ 33; Hairston Aff. ¶ 8.) Hairston was unable to stand and defendants put him into a wheelchair and took him to the infirmary. (Hairston Rule 56.1 Stmt. ¶¶ 33-34; Hairston Aff. ¶ 8.)

Hairston suffered a broken nose, swollen and bloody face and eye, bruised ribs, back and legs and dislocated shoulder. (Hairston Rule 56.1 Stmt. ¶¶ 33, 36-37; Hairston Aff. ¶ 8.)

Due to his injuries, Hairston spent the night in the prison clinic and later was taken to the hospital. (Hairston Rule 56.1 Stmt. ¶¶ 35-37; Ex. A: [FN3] Hairston Aff. ¶¶ 10-11.) While in the prison clinic, Sergeant West interviewed Hairston about the incident. (Hairston Rule 56.1 Stmt. ¶ 35; Hairston Aff. ¶ 9; Ex. N at 583: 6/10/04 Sgt. West "Inter-Departmental Communication.") According to Sgt. West's memo, Hairston told him only that he had been hit. (Ex. N at 583.) Hairston asserts that he told Sgt. West that he was "beaten for no reason by correction officers" at which point Sgt. West yelled at Hairston to "shut up," which intimidated Hairston such that he "felt that if [he] said anything else about the attack, [he] would be subject to further assault and abuse." (Hairston Rule 56.1 Stmt. ¶ 35; Hairston Aff. ¶¶ 9, 14.)

FN3. Unless otherwise indicated, references to Exhibits are to the Klein affidavit exhibits, Dkt. No. 37.

### Hairston's Time in the Special Housing Unit

When Hairston returned from the hospital he was issued a misbehavior report and placed in the Special Housing Unit ("SHU"), where he remained until August 8, 2004. (Hairston Rule 56.1 Stmt. ¶ 38; Dkt. No. 41: Defs. Reply Rule 56.1 Stmt. ¶ 20; Ex. A: Hairston Aff. ¶ 12.)
According to Hairston, he "never spoke with, observed, nor became aware of any IGRC staff member making rounds in SHU." (Hairston Rule 56.1 Stmt.¶ 40; Hairston Aff. ¶ 13.) On June 15, 2004, when Hairston was granted visitation with his wife, Willie Mae Hairston, he related the details of the June 10th assault to her. (Hairston Rule 56.1 Stmt. ¶ 41; Defs. Reply Rule 56.1 Stmt. ¶ 23; Ex. B: Willie Mae Hairston Aff. ¶ 8.)

### Willie Mae Hairston's Letter to Superintendent Phillips and the Inspector General's Office Investigation

On June 18, 2004, Willie Mae Hairston wrote a letter to Superintendent Phillips describing in detail her husband's beating and requesting a thorough investigation. (Hairston Rule 56.1 Stmt. ¶ 42; Ex. B: Willie Mae Hairston Aff. ¶¶ 9-10; Willie Mae Hairston Aff. Ex. 2:

6/18/04 Letter to Supt. Phillips.) On June 25, 2004, Superintendent Phillips responded that "the incident involving your husband has been referred to the Department's Inspector General's Office for investigation." (Willie Mae Hairston Aff. Ex. 3: 6/25/04 Letter from Supt. Phillips; Hairston Rule 56.1 Stmt. ¶ 43; Defs. Reply Rule 56.1 Stmt. ¶ 25; Willie Mae Hairston Aff. ¶ 11.) [FN4] On June 29, 2004, Superintendent Phillips signed the "Use of Force Report" with a note that "circumstances" had "led the facility to refer case to the Inspector General for investigation." (Ex. G at 87: "Use of Force Report.")

> FN4. Additionally, the Inspector General's Office received a complaint from Hairston's brother on July 2, 2004 complaining about Correction Officer Lamarche's assault on Hairston (Dkt. No. 42: Ryan Reply Aff. Ex. A at 523: "Office of the Inspector General, Receipt of Complaint.") Superintendent Phillips also wrote to Barry M. Fallik, Esq., Hairston's attorney, in apparent response to Fallick's letters to him. (Defs. Reply Rule 56.1 Stmt. ¶ 25; Ryan Reply Aff. Ex. A at 718, 719.)

*2 The Inspector General's Office conducted a thorough investigation of the incident. (Hairston Rule 56.1 Stmt. ¶ 44; Defs. Reply Rule 56.1 Stmt. ¶ 26; Ex. N: "Inspector General's Office Investigative Report" & Case File.) The case was assigned to Inspector Hudson on July 6, 2004 (Ex. N at 518: "Investigative Report.") His investigation included interviews with involved correction officers, Hairston and nine inmate witnesses. (Ex. N.) The case file also contained written statements from the involved correction officers; receipts of complaints by the Inspector General's Office; general letters of complaint; and the Inspector's report. (Ex. N.) On July 16, 2004, Investigator Hudson interviewed Hairston, who described the assault. (Hairston Rule 56.1 Stmt. ¶ 48; Defs. Reply Rule 56.1 Stmt. ¶ 30; Ex. N at 629-30: I.G. "Report of Interview" of Hairston; Hairston Aff. ¶ 21.) According to Hairston, Investigator Hudson "indicated that the Inspector General's office would thoroughly and fairly investigate and bring charges against all officers involved in any unjustified use of force." (Hairston Aff. ¶ 21.)

The Inspector General's Report, dated October 5, 2004, concluded that "the use of force involving Inmate Hairston ⋯ was reasonably necessary and in accordance with Department policy and procedure. No evidence was found to support Inmate Hairston's allegation of assault by staff. [The Inspector General] therefore recommend[ed] that this case be closed as unsubstantiated." (Ex. N at 519: "Inspector General's Office Investigative Report" at 2.)

### Hairston's Tier III Disciplinary Hearing and Appeal

On June 16, 2004, Hairston's Tier III Disciplinary Hearing commenced. (Ex. I at 662: Tier III Disciplinary Hrg. Tr. ["Tr."] 2.) At the disciplinary hearing, Hairston described the events of June 10, 2004, including the fact that Officer Lamarche beat him up. (Ex. I at 670-71, 711-14: Tr. 10-11, 51-54.) Hairston wanted to ask the correction officers more details about the assault on him but the hearing officer limited the inquiry, explaining that "it's not

[his] job to investigate staff misconduct" but rather to "try to figure out this incident." (Ex. I at 697-98: Tr. 37-38.) [FN5] The hearing was adjourned until July 2, 2004 and adjourned again to July 11 (Ex. I at 706-07: Tr. 46-47), when Hairston reiterated his testimony, describing his beating in detail. (Ex. I at 712-14: Tr. 52-54).

> FN5. Hairston asked Officer Walts if he had punched him in the face, which prompted the hearing officer to limit the scope of Hairston's questions. (Ex. I at 697-98: Tr. 37-38.) When Hairston persisted with the question, Officer Walts testified that he had to use force and the hearing officer again said that he was "not gonna get into it" and that "staff members are allowed to use justifiable force in an incident." (Ex. I at 698-99: Tr. 38-39.)
>
> On June 17, 2004, Superintendent Phillips wrote Hairston in response to a letter Hairston apparently sent to the Superintendent on June 16, requesting an investigation into Hairston's Tier III hearing. (Dkt. No. 42: Ryan Reply Aff. Ex. A at 720: 6/17/04 "Inter-Departmental Communication.") Superintendent Phillips informed Hairston that he could make the facts of his case known to the hearing officer and could appeal the disposition of the hearing if he was unsatisfied with the result. (Id.)

At the conclusion of the hearing, the hearing officer found Hairston guilty of the charges (including violence, assault on staff and refusing a direct order), based on the correction officers' testimony. (Ex. I at 714-15: Tr. 54-55; Ex. H: Tier III Disposition; Hairston Aff. ¶ 19.) The hearing officer imposed 60 days in SHU and related penalties. (Ex. I at 715-16; Tr. 55-56; Ex. H: Tier III Disposition.) Hairston was informed of his right to file a Tier III appeal of the decision. (Ex. I at 716: Tr. 56.)
*3 On July 12, 2004, Hairston filed a Tier III appeal in which he also reiterated the facts of the assault on him. (Ex. J: Tier III Appeal; Hairston Rule 56.1 Stmt. ¶ 50; Hairston Aff. ¶ 19.) [FN6] On September 15, 2004, Hairston's appeal was denied by Ronald Selsky, Director of Special Housing/Inmate Disciplinary Program. (Ex. K: Review of Superintendent's Hearing.)

> FN6. Although defendants deny that Hairston reiterated the facts of the assault (Defs. Reply Rule 56.1 Stmt. ¶ 32), Hairston's appeal letter does go through the incident and states that Officer LaMarche "started the attack, with a push and punching knock me down to the floor, knocking my head to the floor several times and CO Walts was kicking me all on the left side and back, legs and ribs" (Ex. J: Tier III Appeal).

### Hairston's Release From SHU and Subsequent Filing of Grievance

Hairston asserts that within eight days of his August 8, 2004 release from SHU, he learned from another inmate that he should have filed a grievance to address his assault claim.

(Ex. A: Hairston Aff. ¶¶ 22, 24.) Consequently, on August 16, 2004, Hairston filed a grievance alleging assault by Officers Lamarche and Walts. (Ex. L: 8/16/04 Inmate Grievance Complaint No. GH54482-04; Defs. & Hairston Rule 56.1 Stmts. ¶ 14; Hairston Rule 56.1 Stmt. ¶ 51; Hairston Aff. ¶ 24.)

On August 21, 2004 Hairston was again interviewed by Sgt. West about the incident. (Ryan Aff. Ex. B at 18: "Inter-Departmental Communication"; see Hairston Rule 56.1 Stmt. ¶ 54; Hairston Aff. ¶ 25.)

On September 10, 2004, Superintendent Phillips denied Hairston's grievance:

> All written To/Froms, U.I. reports, misbehavior report and Tier hearing were utilized in the investigation.
>
> The evidence presented does not substantiate the allegations. This grievance is filed over 2 months after the incident and is grossly untimely. Grievance is denied.

(Ex. M: 9/10/04 Superintendent Phillips Decision on Grievance GH54482-04; see Defs. & Hairston Rule 56.1 Stmts. ¶ 15.) It is undisputed that Hairston did not appeal the denial of his grievance. (Defs. & Hairston Rule 56.1 Stmts. ¶ 17; Ryan Aff. Ex. D: Eagen Aff. ¶¶ 8-10.) Hairston asserts that he "believed that [he] could not make any other administrative complaints or appeals and that [he] had to file a lawsuit to seek justice." (Hairston Aff. ¶ 26.)

### Hairston's Federal Complaint

Hairston's initial § 1983 complaint asserted claims against New York State, DOCS and Correction Officers Lamarche, Wright and Walts. (Dkt. No. 2: Compl.) On May 19, 2006, represented by counsel, Hairston filed an Amended Complaint adding Correction Officers Wurster and Kutus and Sgt. Lonczak as additional defendants, and dropping New York State and DOCS. (Dkt. No. 31: Am. Compl.; see Dkt. No. 28: 4/12/06 Order.) Hill's amended complaint alleges that his Fourth and Eighth Amendment rights were violated due to the excessive use of force against him, summary punishment imposed on him by defendants, and deliberate indifference to his serious medical needs. (Am.Compl.¶ 26.)

### ANALYSIS

I. SUMMARY JUDGMENT STANDARDS IN SECTION 1983 CASES [FN7]

FN7. For additional decisions by this Judge discussing the summary judgment standards in Section 1983 cases, in language substantially similar to that in this entire section of this Report and Recommendation, see, e.g., Hill v. Melvin, 05 Civ. 6645, 2006 WL 1749520 at *3-5 (S.D.N.Y. June 27, 2006) (Peck, M.J.); Denis v. N.Y.S. Dep't of Corr. Servs., 05 Civ. 4495, 2006 WL 217926 at *9-11 (S.D.N.Y. Jan. 30, 2006) (Peck, M.J.), report & rec. adopted, 2006 WL 406313 (S.D.N.Y. Feb. 22, 2006) (Kaplan, D.J.); Ramashwar v. Espinoza, 05 Civ.2021, 2006 WL 23481 at *5-6 (S.D.N.Y.

Jan. 5, 2006) (Peck, M.J.); Doe v. Goord, 04 Civ. 0570, 2005 WL 3116413 at *8-10 (S.D.N.Y. Nov. 22, 2005) (Peck, M.J.); Dawkins v. Jones, No. 03 Civ. 0068, 2005 WL 196537 at *9-10 (S.D.N.Y. Jan. 31, 2005) (Peck, M.J.); Hall v. Perilli, 03 Civ. 4635, 2004 WL 1068045 at *3 (S.D.N.Y. May 13, 2004) (Peck, M.J.); Baker v. Welch, 03 Civ. 2267, 2003 WL 22901051 at *4-6 (S .D.N.Y. Dec. 10, 2003) (Peck, M.J.); Muhammad v. Pico, 02 Civ. 1052, 2003 WL 21792158 at *10-11 (S.D.N.Y. Aug. 5, 2003) (Peck, M.J.) (citing prior decisions).

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see also, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10 (1986); Lang v. Retirement Living Pub. Co., 949 F.2d 576, 580 (2d Cir.1991).

*4 The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment. See, e.g., Adickes v.. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608 (1970); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 36 (2d Cir.1994); Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir.1994). The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on an issue on which the non-movant has the burden of proof. See, e.g., Celotex Corp. v. Catrett, 477 U.S. at 323, 106 S.Ct. at 2552-53.

To defeat a summary judgment motion, the non-moving party must do "more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986). Instead, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); accord, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587, 106 S.Ct. at 1356.

In evaluating the record to determine whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. at 255, 106 S.Ct. at 2513; see also, e.g., Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 36; Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d at 1223. The Court draws all inferences in favor of the nonmoving party only after determining that such inferences are reasonable, considering all the evidence presented. See, e.g., Apex Oil Co. v. DiMauro, 822 F.2d 246, 252 (2d Cir.) ,cert. denied, 484 U.S. 977, 108 S.Ct. 489 (1987). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 37.

In considering a motion for summary judgment, the Court is not to resolve contested issues

of fact, but rather is to determine whether there exists any disputed issue of material fact. *See, e.g.*, Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir.1987); Knight v. United States Fire Ins. Co., 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570 (1987). To evaluate a fact's materiality, the substantive law determines which facts are critical and which facts are irrelevant. *See, e.g.*, Anderson v. Liberty Lobby, Inc., 477 U.S. at 248, 106 S.Ct. at 2510. While "disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment[,][f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. at 2510 (citations omitted); *see also, e.g.*, Knight v. United States Fire Ins. Co., 804 F.2d at 11-12.

## II. DEFENDANTS' SUMMARY JUDGMENT MOTION FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES SHOULD BE DENIED

### A. Exhaustion of Administrative Remedies: Background

*5 Under 42 U.S.C. § 1997e(a), as amended by the Prison Litigation Reform Act ("PLRA"), a prisoner must exhaust administrative remedies before bringing suit in federal court under federal law:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). This provision requires complete and proper exhaustion in accordance with the prison's administrative procedures. *See, e.g.*, Woodford v. Ngo, 126 S.Ct. 2378, 2382, 2387-88 (2006). Exhaustion is required even when a prisoner seeks a remedy that cannot be awarded by the administrative procedures. *E.g.*, Woodford v. Ngo, 126 S.Ct. at 2382-83; Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 988 (2002); Booth v. Churner, 532 U.S. 731, 741, 121 S.Ct. 1819, 1825 (2001). FN8 The Supreme Court has made clear that the PLRA's exhaustion requirement applies to all prisoner claims:

> FN8. *See also, e.g.*, Beharry v. Ashcroft, 329 F.3d 51, 58 (2d Cir.2003); Doe v. Goord, 04 Civ. 0570, 2004 WL 2829876 at *7 (S.D.N.Y. Dec. 10, 2004) (Peck, M.J.); Rivera v. Pataki, 01 Civ. 5179, 2003 WL 21511939 at *4, 8 (S.D.N.Y. July 1, 2003); Muhammad v. Pico, 02 Civ. 1052, 2003 WL 21792158 at *7 (S.D.N.Y. Aug. 5, 2003) (Peck, M.J.); Nelson v. Rodas, 01 Civ. 7887, 2002 WL 31075804 at *2 (S.D.N.Y. Sept. 17, 2002) (Peck, M.J.).

> [W]e hold that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.

Porter v. Nussle, 534 U.S. at 532, 122 S.Ct. at 992; *see also, e.g.*, Woodford v. Ngo, 126 S.Ct. at 2383 ("exhaustion of available administrative remedies is required for any suit challenging prison conditions"); Brownell v. Krom, 446 F.3d 305, 310 (2d Cir.2006); Doe v. Goord, 2004 WL 2829876 at *7-8.

The purpose of the PLRA is " 'to reduce the quantity and improve the quality of prisoner suits ⋯ [and to afford] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. ' "Abney v. McGinnis, 380 F.3d 663, 667 (2d Cir.2004) (quoting Porter v. Nussle, 534 U.S. at 524-25, 122 S.Ct. at 988); *see also, e.g.*, Woodford v. Ngo, 126 S.Ct. at 2387; Brownell v. Krom, 446 F.3d at 310.

The Second Circuit has held, in furtherance of the PLRA's objectives, that "inmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures." Johnson v. Testman, 380 F.3d 691, 697 (2d Cir.2004); *accord, e.g.*, Brownell v. Krom, 446 F.3d at 310. "In determining

whether exhaustion has been achieved, [the Second Circuit has] drawn an analogy between the contents of an administrative grievance and notice pleading, explaining that ' "[a]s in a notice pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming." ' " Brownell v. Krom, 446 F.3d at 310 (quoting Johnson v. Testman, 380 F.3d at 697). Thus, to determine whether an inmate has exhausted his administrative remedies, the Court must determine whether the inmate's grievance was sufficient on its face to alert the prison of his complaint. Brownell v. Krom, 446 F.3d at 310-11.

*6 Where an inmate has not exhausted administrative remedies according to the letter of the prescribed prison procedures, the Court must determine whether circumstances existed to excuse the inmate's failure to exhaust his administrative remedies. Brownell v. Krom, 446 F.3d at 311 (concluding that the inmate's grievance was not exhausted where it had not sufficiently put the defendants on notice of the allegations in his complaint but that special circumstances justified his failure to exhaust).

The Second Circuit has set forth a three-part inquiry to determine whether an inmate has exhausted administrative remedies:

> Depending on the inmate's explanation for the alleged failure to exhaust, the court must [1] ask whether administrative remedies were in fact "available" to the prisoner. Abney v. McGinnis, 380 F .3d 663, 2004 WL 1842647.[2] The court should also inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, Johnson v. Testman, 380 F.3d 691, 2004 WL 1842669, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense, Ziemba [v. Wezner], 366 F.3d [161,] 163 [ (2d Cir.2004) ]. [3] If the court finds that administrative remedies were available to the plaintiff, and that the defendants are not estopped and have not forfeited their non-exhaustion defense, but that the plaintiff nevertheless did not exhaust available remedies, the court should consider whether "special circumstances" have been plausibly alleged that justify "the prisoner's failure to comply with administrative procedural requirements." Giano v. Goord, 380 F.3d 670, 2004 WL 1842652 [ (2d Cir.2004) ].

Hemphill v. New York, 380 F.3d 680, 686 (2d Cir.2004); accord, e.g., Brownell v. Krom, 446 F.3d at 311-12; Braham v. Clancy, 425 F.3d 177, 181-82 (2d Cir.2005). [FN9]

> FN9. The Second Circuit has yet to address the effect, if any, of the recent Supreme Court's Woodford decision on the three-step Hemphill inquiry. In Woodford, where the inmate had filed an untimely grievance, the Supreme Court held that a prisoner must "properly" exhaust administrative remedies before suing in federal court. Woodford v. Ngo, 126 S.Ct. at 2382. Judge Mukasey issued the only opinion within this Circuit discussing Woodford, and in it he recognized that "it is open to doubt whether Woodford is compatible with the results reached in some of the cases in this Circuit

applying *Hemphill*, and parts of the *Hemphill* inquiry may be in tension with *Woodford*." Collins v. Goord, 05 Civ. 7484, --- F.Supp.2d ----, 2006 WL 1928646 at *7 n. 13 (S.D.N.Y. July 11, 2006); *see* Hernandez v. Coffey, 99 Civ. 11615, 2006 WL 2109465 at *3 (S.D.N.Y. July 26, 2006) (noting that *Collins* applied the *Hemphill* three-part inquiry after *Woodford*).

"The test for deciding whether the ordinary grievance procedures were available must be an objective one: that is, would 'a similarly situated individual of ordinary firmness' have deemed them available ." Hemphill v. New York, 380 F.3d at 688.

Similarly, justification for a failure to exhaust otherwise available administrative remedies is determined by "looking at the circumstances which might understandably lead usually uncounselled prisoners to fail to grieve in the normally required way." Giano v. Goord, 380 F.3d at 678 (prisoner's belief that direct appeal of his disciplinary conviction was his only available remedy was a reasonable interpretation of DOCS' directives and therefore his failure to exhaust was justified).

Dismissal of an action for failure to exhaust administrative remedies ordinarily is without prejudice. *E.g.*, Giano v. Goord, 380 F.3d at 675 ("[A]dministrative exhaustion is not a jurisdictional predicate."); Berry v. Kerik, 366 F.3d 85, 87 (2d Cir.2004) ("As we have noted, ' [f]ailure to exhaust administrative remedies is often a temporary, curable procedural flaw. If the time permitted for pursuing administrative remedies has not expired, a prisoner who brings suit without having exhausted these remedies can cure the defect simply by exhausting them and then reinstituting his suit····' In such circumstances, we have recognized that dismissal without prejudice is appropriate.") (citations omitted).[FN10]

> FN10.  *See also, e.g.*, Townsend v. Armstrong, 67 Fed. Appx. 47, 49 (2d Cir.2003); De La Motte v. Menifee, 40 Fed. Appx. 639, 639 (2d Cir.2002); Doe v. Goord, 2004 WL 2829876 at *8; Muhammad v.. Pico, 2003 WL 21792158 at *8; Stevens v. Goord, 99 Civ. 11669, 2003 WL 21396665 at *4 (S.D.N.Y. June 16, 2003); Nelson v. Rodas, 2002 WL 31075804 at *2.

### 1. DOCS' Grievance Procedures

*7 It is useful to summarize DOCS' "well-established" normal three tier internal grievance procedure ("IGP"):

> It consists of three levels. The first is the filing of a complaint with the facility's Inmate Grievance Review Committee. The second is an appeal to the facility superintendent. The final level is an appeal to the DOCS Central Office Review Committee in Albany···· A prisoner has not exhausted his administrative remedies until he goes through all three levels of the grievance procedure.

Doe v. Goord, 04 Civ. 0570, 2004 WL 2829876 at *8-9 (S.D.N.Y. Dec. 10, 2004) (Peck, M.J.); *accord, e.g.*, Muhammad v. Pico, 02 Civ. 1052, 2003 WL 21792158 at *8 & n. 21 (S.D.N.Y. Aug. 5, 2003) (Peck, M.J.) (citing cases); *see* N.Y. Correct. Law §§ 138-39; 7

N.Y .C.R.R. § 701.1, et seq.; *see also, e.g.*, Brownell v. Krom, 446 F .3d 305, 309 (2d Cir.2006); Abney v. McGinnis, 380 F.3d 663, 668 (2d Cir.2004); Collins v. Goord, 05 Civ. 7484, --- F.Supp.2d ----, 2006 WL 1928646 at *7 (S.D.N.Y. July 11, 2006) ("As a general matter, only after pursuing all three steps has an inmate 'exhausted' his claim.").

DOCS also provides for an "expedited procedure for the review of grievances alleging harassment" by DOCS employees,[FN11] as follows:

> FN11. Harassment includes "employee misconduct meant to ··· harm an inmate." 7 N.Y.C.R.R. § 701.11(a); *see also, e.g.*, Hemphill v. New York, 380 F.3d 680, 687 (2d Cir.2004) (7 N.Y.C.R.R. § 701.11 "provided grievance procedures that inmates claiming excessive force could utilize."); Dukes v. S.H.U. C.O. John Doe, 03 Civ. 4639, 2006 WL 1628487 at *4 (S.D.N.Y. June 12, 2006) (expedited grievance procedure under 7 N.Y.C.R.R. § 701.11 applied to inmate's claim of excessive force by DOCS officers); Larry v. Byno, No. 9:01-CV1574, 2006 WL 1313344 at *3 (N.D.N.Y. May 11, 2006) ("There is also an expedited grievance procedure for prisoners who, as in the present case, allege that they have been harassed or assaulted by correctional officers. 7 N.Y.C.R.R. § 701.11.").

> (b) Procedure.
> (1) An inmate who wishes to file a grievance complaint that alleges employee harassment shall follow the procedures set forth in section 701.7(a)(1) of this Part.
> Note: An inmate who feels that s(he) has been the victim of employee misconduct or harassment should report such occurrences to the immediate supervisor of that employee. However, this is not a prerequisite for filing a grievance with the IGP.
> (2) All grievances alleging employee misconduct shall be given a grievance calendar number and recorded in sequence. All documents submitted with the allegation must be forwarded to the superintendent by close of business that day.
> (3) The superintendent or his designee shall promptly determine whether the grievance, if true, would represent a bona fide case of harassment as defined in subdivision (a) of this section. If not, then it shall be returned to the IGRC for normal processing.
> (4) If it is determined that the grievance is a bona fide harassment issue, the superintendent shall either:
> (i) initiate an in-house investigation by higher ranking supervisory personnel into the allegations contained in the grievance; or
> (ii) request an investigation by the inspector general's office or, if the superintendent determines that criminal activity is involved, by the New York State Police Bureau of Criminal Investigation.
> (5) Within 12 working days of receipt of the grievance, the superintendent

will render a decision on the grievance and transmit said decision, with reasons stated to the grievant, the IGP clerk, and any direct party of interest. Time limit extensions may be requested, but such extensions may be granted only with the consent of the grievant.

*8 (6) If the superintendent fails to respond within the required time limit, the grievant may appeal his grievance to the CORC. This is done by filing a notice of decision to appeal with the IGP clerk.

(7) If the grievant wishes to appeal the superintendent's response to the CORC, he must file a notice of decision to appeal with the inmate IGP clerk within four working days of receipt of that response.

(8) Unless otherwise stipulated in this section, all procedures, rights, and duties required in the processing of any other grievance as set forth in section 701.7 of this Part shall be followed.

7 N.Y.C.R.R. § 701.11. ( See Ex. O: DOCS Directive 4040, § VIII.)

The Inmate Grievance Procedure for prisoners in SHU provides that "an IGRC staff member ⋯ will make rounds of all SHU areas at a reasonable time at least once a week." 7 N.Y.C.R.R. § 701.13(c).

(1) These rounds will allow for direct access to a member of the IGP. This procedure will allow inmates with writing or other communication problems the opportunity to request assistance.

(2) Inmates who wish to file a grievance and who have difficulty in doing so will be provided the necessary assistance upon request. Any problems of this nature will be reported to the IGP supervisor. The IGP supervisor will work with the deputy superintendents of programs and/or security to obtain the necessary assistance for inmates with such problems.

7 N.Y.C.R.R. § 701.13(c)(1)-(2). ( See Ex. O: DOCS Directive 4040 § VII.E). [FN12]

> FN12. Additionally, 7 N.Y.C.R.R. § 304.14 provides that "a staff representative of the inmate grievance resolution committee will visit the SHU a minimum of once per week, or more often if necessary or requested to do so by the supervisor in charge of the SHU, to interview the inmate and investigate the grievance."

### B. Hairston's Administrative Remedies Should Be Deemed Exhausted

Hairston contends that he exhausted administrative remedies by notifying DOCS of his complaint through his disciplinary appeal and through letters to the Superintendent which resulted in an investigation by the Inspector General's Office. (Dkt. No. 39: Hairston Br. at 2-7.)

This is not a case, like *Woodford*, where the inmate tried to bring his federal lawsuit while bypassing prison grievance procedures. Rather, Hairston tried to exhaust prison grievance procedures; although each of his efforts, alone, may not have fully complied, together his efforts sufficiently informed prison officials of his grievance and led to a thorough

investigation of the grievance as to satisfy the purpose of the PLRA or to constitute "special circumstances" justify any failure to fully comply with DOCS' exhaustion requirements.

Hairston did not initially file a grievance to initiate the expedited grievance procedure of 7 N.Y.C.R.R. § 701.11(b). However, he had been placed in SHU immediately after the incident and he alleges that, contrary to DOCS policy, he was never aware of any IGRC staff making rounds in SHU. ( See pages 3-4 above.) Hairston's testimony thus would create an issue of fact as to whether administrative procedures were "available" to him while he was in SHU, or whether, if Hairston were believed, DOCS' action inhibiting Hairston's exhaustion of remedies while in SHU would estop defendants from raising Hairston's failure to exhaust as a defense.

*9 There is more, however, that allows the Court to decide the exhaustion issue in Hairston's favor on this record.

Hairston's wife timely (within eight days of the incident) wrote to the Superintendent, describing the guards' assault on her husband and requesting a thorough investigation. ( See page 4 above.) As defendants point out (Dkt. No. 40: Defs. Reply Br. at 6), pre-*Hemphill* cases generally held that merely writing a complaint letter to the Superintendent (or Commissioner or other high-level prison official, or the Inspector General or similar official) does not suffice to exhaust administrative remedies; such officials receive too many such letters. *See, e.g.*, Muhammed v. Pico, 02 Civ. 1052, 2003 WL 21792158 at *8 (S.D.N.Y. Aug. 5, 2003) (Peck, M.J.) ("District court decisions in this circuit have repeatedly held that complaint letters to the DOCS Commissioner or the facility Superintendent do not satisfy the PLRA's exhaustion requirements.") (citing cases).[FN13] After the Second Circuit's August 18, 2004 *Hemphill* line of cases, whether or not a complaint letter to the Superintendent or Inspector General alone suffices to exhaust administrative remedies (and this Court believes it should not), a letter to the Superintendent who then commences an Inspector General investigation can constitute "special circumstances" that satisfy the PLRA requirement that prison officials be afforded time and opportunity to address prisoner complaints internally. The Second Circuit has held that an inmate's letter of complaint which results in a formal investigation could "suffice[ ] to put the defendants on notice and provide[ ] defendants the time and an opportunity to address" an inmate's complaints. Edwards v. Tarascio, 119 Fed. Appx. 327, 330 (2d Cir.2005); *see* Braham v. Clancy, 425 F.3d 177, 183 (2d Cir.2005) ( "Although we agree with the District Court's conclusion that remedies were available, our decision in Johnson nonetheless requires that we remand for consideration of whether [plaintiff's] filing of three inmate request forms, his complaint about the prison officials' unresponsiveness to these forms during his disciplinary appeal, or some combination of the two, provided sufficient notice to the prison officials 'to allow [them] to take appropriate responsive measures,' thereby satisfying the exhaustion of administrative remedies requirement."); Riccio v. Wezner, 124 Fed. Appx. 33, 36 (2d Cir.2005).[FN14]

> FN13. *See also, e.g.*, Thomas v. Cassleberry, 315 F.Supp.2d 301, 304 (W.D.N.Y.2004) (plaintiff's letter to the Inspector General's Office did not

result in a finding favorable to him and therefore did not suffice to exhaust his claim); <u>McNair v. Jones, 01 Civ. 3253, 2002 WL 31082948 at *7-8 (S.D.N.Y. Sept. 18, 2002)</u> (letters to the Superintendent and to the Inspector General did not satisfy exhaustion requirement), <u>report & rec. adopted, 2003 WL 22097730 (S.D.N.Y. Sept. 10, 2003)</u>; <u>Houze v. Segarra, 217 F.Supp.2d 394, 395-96 (S.D.N.Y.2002)</u>; <u>Grey v. Sparhawk, 99 Civ. 9871, 2000 WL 815916 at *2 (S.D.N.Y. June 23, 2000)</u>.

<u>FN14</u>. The Court notes that a pre- *Hemphill* district court decision which held an inmate had failed to exhaust administrative remedies despite letters to the Superintendent and the Inspector General's Office, was vacated and remanded by the Second Circuit to consider whether "special circumstances" justified the inmate's failure to exhaust. *See* <u>Stephenson v. Dunford, 320 F.Supp.2d 44 (W.D.N.Y.2004)</u>, *vacated*, <u>139 Fed. Appx. 311 (2d Cir.2005)</u>. *But see* <u>Tapp v. Kitchen, No. 02-CV-6658, 2004 WL 2403827 at *7 (W.D.N.Y. Oct. 26, 2004)</u> (Plaintiff's letters to the Superintendent and the Inspector General were not sufficient to exhaust administrative remedies where Inspector General's investigation found plaintiff's complaint unsubstantiated.).

That is what happened here. Superintendent Phillips took action on Ms. Hairston's letter-he referred the complaint to the Inspector General's Office for investigation, and so notified Ms. Hairston. ( See page 4 above.) Thus, Ms. Hairston's letter caused the same result as an expedited grievance-the Superintendent "request[ing] an investigation by the inspector general's office." <u>7 N.Y.C.R.R. § 701.11(b)(4)(ii)</u>.

DOCS procedures as to an administrative appeal are unclear to this Court where, as here, the Superintendent has directed that the complaint be investigated by the Inspector General's Office. <u>7 N.Y.C.R.R. § 701.11(b)(4)(ii)</u>. At that stage, the inmate has obtained at least partial favorable relief, and as the Second Circuit has held, where the inmate receives favorable relief there is no basis for administrative appeal. *See, e.g.*, <u>Abney v. McGinnis, 380 F.3d 663, 669 (2d Cir.2004)</u> ("The defendants' failure to implement the multiple rulings in [plaintiff's] favor rendered administrative relief 'unavailable' under the PLRA···· A prisoner who has not received promised relief is not required to file a new grievance where doing so may result in a never-ending cycle of exhaustion."). Moreover, the requirement in <u>§ 701.11(b)(5)</u> that the Superintendent render a decision within 12 working days of receipt of the grievance (or else the inmate "may" file an appeal, <u>§ 701.11(b)(6)</u>), does not seem consistent with the time necessary for an Inspector General investigation (which in Hairston's case took almost four months after the incident). (See page 5 above.)

*10 If, following the procedures of <u>7 N.Y.C.R.R. § 701.11(b)</u>, the Superintendent (regardless of the 12 day rule) is to render a decision after the Inspector General concludes its investigation, and that triggers the inmate's obligation to appeal, the Superintendent here did not render any decision after the October 5, 2004 Inspector

General's report. Indeed, it appears that Hairston did not receive the Inspector General's report until discovery in this litigation.

It is the practice in this Circuit to dismiss without prejudice unexhausted claims to provide inmates the opportunity to exhaust within the administrative system and then return to federal court if need be. ( See cases cited on page 15 above.) Here, since Hairston never received notice of a decision by the Superintendent regarding his complaint, the four days he would have had to file an appeal of that decision under 7 N.Y.C.R.R. § 701.11(b)(7) never began to run. Thus, Hairston could still file an appeal to CORC. However, from the Superintendent's denial of Hairston's August grievance and Deputy Commissioner Selsky's denial of Hairston's appeal of his disciplinary hearing, it is apparent that any administrative appeal by Hairston now would be denied. Thus, on the particular circumstances of this case, in the interest of judicial efficiency, Hairston's federal complaint should not be dismissed without prejudice but instead should be allowed to proceed on the merits, especially since Hairston also tried to exhaust administrative remedies in two additional ways, justifying a finding of special circumstances.

In the midst of the Inspector General Office's investigation, Hairston's disciplinary hearing was held. ( See pages 5-6 above.) Hairston raised the issue of the guards' assault at the disciplinary hearing, but the hearing officer did not allow the issue to be explored and did not inform Hairston of the proper avenue to raise that complaint.[FN15] Hairston again raised the assault issue in his appeal of the disciplinary hearing, which was denied by Deputy Commissioner Selsky on September 15, 2004. ( See page 7 above.)

> FN15. *Compare* Reynoso v. Swezey, 423 F.Supp.2d 73, 75-76 (W.D.N.Y.2006) (plaintiff who had filed grievance but failed to appeal to CORC and raised his allegations of assault in his disciplinary proceeding failed to exhaust where plaintiff had been informed during his disciplinary hearing that he had "other avenues available" to claim staff misconduct thereby eliminating the ambiguities that existed in *Johnson* and *Giano*.).

The Court agrees with defendants (Defs. Reply Br. at 8, citing *Eleby v. Simmons*, 02 Civ. 636, 2005 U.S. Dist. LEXIS 40346 at *27 (W.D.N.Y. Apr. 11, 2005), *report & rec. adopted*, 2005 U.S. Dist. LEXIS 40350 (W.D.N.Y. June 24, 2005)) that prison disciplinary proceedings focus on the inmate's conduct, and thus ordinarily do not serve to exhaust the inmate's claim against correction officers. *See also, e.g*, Scott v. Gardner, 02 Civ. 8963, 2005 WL 984117 at *2-4 (S.D.N.Y. Apr. 28, 2005) (Even though *Giano* held that disciplinary appeals could excuse the filing of a grievance, plaintiff was not excused where he did not allege retaliation in his disciplinary hearing and appeal); Colon v. Farrell, No. 01-CV-6480, 2004 WL 2126659 at *5 (W.D.N.Y. Sept. 23, 2004) (" 'The general rule is that an appeal from a disciplinary hearing does not satisfy the grievance exhaustion requirement for an Eighth Amendment excessive force claim, even if the hearing is based on the same set of facts underlying the grievance.' ") (quoting pre-*Hemphill* cases). In this case, however, it is further evidence that Hairston tried to alert DOCS officials, including those in Albany, to his claims against correction officers for assault.

31

*11 Finally, once Hairston was released from the SHU and was advised by another inmate that he should file a grievance, he promptly did so. ( See page 7 above.) Superintendent Phillips denied the grievance (although the Inspector General's investigation had not concluded), stating: "The evidence presented does not substantiate the allegations. This grievance is filed over two months after the incident and is grossly untimely." (Ex. M, quoted at pages 7-8 above.) It is unclear if the Superintendent's decision was on the merits, or based on the grievance being untimely, or some combination. Hairston asserts that he believed he could not appeal because the Superintendent found his grievance untimely. ( See page 8 above.) Under Woodford v. Ngo, 126 S.Ct. 2378, 2387-88 (2006), an untimely grievance (whether or not Hairston had appealed) would not properly exhaust administrative procedures. However, the Court reads the Superintendent's denial of the grievance as resting on the merits ("The evidence presented does not substantiate the allegations.") with the untimely nature of the grievance an additional factor. The Superintendent's decision is anything but clear, and a reasonable inmate in Hairston's position could have forgone an appeal by focusing on the part of the decision finding the grievance untimely.

One thing is clear, however. Hairston was not attempting to circumvent the exhaustion requirements. Compare, e.g., Woodford v.. Ngo, 126 S.Ct. at 2388, & Giano v. Goord, 380 F.3d 670, 677 (2d Cir.2004). His wife's complaint on his behalf to the Superintendent led to an investigation by the Inspector General. Hairston also filed his own grievance once out of SHU, and also tried to raise issues about the guards' assault on him in the Tier III disciplinary hearing and his appeal to Albany from that decision. While he never exactly and completely complied with DOCS' grievance procedures, he did try to appropriately exhaust, and "special circumstances" exist justifying his failure to fully comply with the administrative procedural requirements. Allowing Hairston's case to proceed on the merits would not "subvert Congress's desire to 'afford[ ] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.' " Giano v. Goord, 380 F.3d at 677-78. On the contrary, a complete investigation was conducted. Therefore, under Giano and Johnson, "special circumstances" justify any technical failure by Hairston to completely exhaust his administrative remedies; Hairston put defendants on notice sufficient to now pursue his claims in federal court. See Benjamin v. Comm'r. New York State Dep't of Corr. Servs., 02 Civ. 1702, 2006 WL 783380 at *3 (S.D.N.Y. Mar. 28, 2006) (Plaintiff's letter to the Superintendent explaining the incident and detailed allegations about the incident in his disciplinary appeal statements satisfy the "lenient standard" set forth in Johnson, i.e., providing prison officials enough information to take appropriate responsive measures, although noting the "potential for abuse inherent in the exceptions outlined in Johnson, Giano, and Hemphill.").

## CONCLUSION

*12 For the reasons set forth above, defendants motion for summary judgment for alleged failure to exhaust administrative remedies should be DENIED. This Court is issuing a separate scheduling order.

**FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to <u>28 U.S.C. § 636(b)(1)</u> and <u>Rule 72(b) of the Federal Rules of Civil Procedure</u>, the parties shall have ten (10) days from service of this Report to file written objections. *See also* <u>Fed.R.Civ.P. 6</u>. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Kimba M. Wood, 500 Pearl Street, Room 1610, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Wood (with a courtesy copy to my chambers). Failure to file objections will result in a waiver of those objections for purposes of appeal. <u>Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466 (1985)</u>; <u>IUE AFL-CIO Pension Fund v. Herrmann, 9 F .3d 1049, 1054 (2d Cir.1993)</u>, *cert. denied,* <u>513 U.S. 822, 115 S.Ct. 86 (1994)</u>; <u>Roldan v. Racette, 984 F.2d 85, 89 (2d Cir.1993)</u>; <u>Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.)</u>, *cert. denied,* <u>506 U.S. 1038, 113 S.Ct. 825 (1992); Small v. Secretary of Health & Human Servs., 892 F.2d 15, 16 (2d Cir.1989)</u>; <u>Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir.1988)</u>; <u>McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir.1983)</u>; <u>28 U.S.C. 636(b)(1)</u>; <u>Fed.R.Civ.P. 72, 6(a)</u>, <u>6(e)</u>.

Slip Copy, 2006 WL 2309592 (S.D.N.Y.)

END OF DOCUMENT

(C) 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.